**IN UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| MITCHELL MATHIS | ) | |
| 1400 Irving St., NW | ) | |
| Apt. 131 | ) | |
| Washington, DC 20001 | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case  No. |
| | ) | |
| | ) | |
| RIZWAN SHAH | ) | |
| 14403 St. George Hwy | ) | |
| Accokeek, MD  20607 | ) | |
| | ) | |
| *Defendant.* | ) | |
| _____ | ) | |

## COMPLAINT

Comes Now PLAINTIFF, Mitchell Mathis (hereinafter "Plaintiff" or "Mr. Mathis"), by and through his undersigned counsel with the following Complaint for damages, equitable and injunctive relief for tortious and unlawful acts committed by Defendant Rizwan Shah (hereinafter "Defendant" or "Mr. Shah") and states as follows:

## PARTIES

1.      At all times relevant, Plaintiff is and has been a resident of the District of Columbia.   He is the controlling owner of Urban Integrations, LLC a District of Columbia limited liability corporation, and the Managing Member of Brooklyn on U, LLC also a District of Columbia limited liability corporation.   The Operating Agreements of both entities are attached hereto as EXHIBITS 1 and 2, respectively.

2.      Defendant is a resident of Maryland and not an owner of any interest in either LLC or signatory to any formational agreement.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter based on complete diversity of the parties and a matter in controversy that exceeds $75,000.00, exclusive of interest and costs, in accordance with 28 U.S.C. §1332.   Plaintiff is a resident of the District of Columbia and Defendant is a resident of Maryland.

5.      This Court is the proper venue because all acts and actions in controversy took place in the District of Columbia, and were taken upon and with respect to businesses formed under and governed by the laws of the District of Columbia.

## FACTS

6.      During all times relevant to this Complaint, Plaintiff has been in the business of development and promotions in the entertainment/service industry.   For approximately twenty (20) years, he has built a business network and brand around promotion of night club/party/restaurant/lounge businesses in and around the District of Columbia Area., and around the country.

7.      As a result of his initiative and efforts, he was able to curate a large social media following and an ability to drive customers to businesses, particularly those that wish to cultivate an urban, upscale, African-American customer base.

8.      In 2006, Plaintiff met Defendant through an Defendant's cousin, who was an acquaintance of Plaintiff's.   Later, in 2010, while traveling in Dubai, Plaintiff reconnected with Defendant.   At the time, Defendant was employed by Deloitte & Touche as an accountant in the Dubai office.  They developed an amicable relationship

and began discussing business opportunities in the District of Columbia, which was also the area in which Defendant's family resided.

9.      It was during that time that Defendant had expressed to Plaintiff his desire to leave the Middle East and return to the Washington DC area (hereinafter "the DMV") to be closer to his family, and to open an upscale and lavish restaurant and club.  Upon information and belief, Defendant had no previous experience opening a business or promoting any kind of entertainment concept in the DMV.

10.     In 2014, Defendant approached Plaintiff (hereinafter, collectively, "the Parties") to discuss making concrete plans to open a concept restaurant/lounge.

11.     A great deal of discussion took place between the Parties as to how the business would be developed and run.  Importantly, Defendant made certain key representations to Plaintiff about Plaintiff's rights in the business enterprise, which induced Plaintiff to move forward.  Chief among those representations were that:

   (a)   Plaintiff would have and maintain the controlling interest and final decision-making authority on all matters related to the business;
   (b)   Defendant would do nothing to sabotage or undermine the business, or Plaintiff's interest in the business;
   (c)   That should the business engage new partners or other members, the Parties would work together to ensure that the vision that they had collaborated to develop would not be disturbed;
   (d)   Defendant's wife would also refrain from taking any actions that would undermine Plaintiff's ownership interest and stake in the business.

12.     Based ENTIRELY on these representations from Defendant, Plaintiff agreed to enter into an agreement to form Urban Integrations LLC (EXHIBIT 1) on or about September 15, 2016.  Of particular import is the fact that Defendant was NOT a signatory to the Urban Integrations LLC agreement.  Rather, Defendant insisted that

Plaintiff enter into business with Defendant's wife, Trisha Shah (hereinafter "Mrs. Shah").

12.     Also of import, the initial financial investment in Urban Integrations LLC was made by investors procured by Plaintiff, they were Samira Alli, Farida Alli and Marcus Williams.  Defendant did not know any of these investors prior to the introduction made by Plaintiff.

13.     Despite Plaintiff's enthusiasm for the project, progress was very slow because of the inexperience and disinterest of Mrs. Shah, and the fact that Defendant was frequently away from the DMV on business with this principal employer.

14.     In the Summer of 2017, Plaintiff suggested that a third partner be brought in to help with the restaurant operation side of the business and recommended Peter Lupo (hereinafter "Mr. Lupo"), the brother of one of Plaintiff's friends, who had experience running restaurants in the DMV.

15.     On or about February 1, 2017, the signatories to the Urban Integrations LLC agreement and Mr. Lupo entered into a second agreement to form Brooklyn on U, LLC, which would give Plaintiff 40% of the shares, Mrs. Shah 40% of the shares and Mr. Lupo 20% of the shares.  *See* EXHIBIT 2.  Importantly, and the *sine qua non* to Plaintiff's willingness to enter the Brooklyn on U agreement, was the fact that the Brooklyn on U agreement specifically named him as "Managing Member," with very specific rights and responsibilities to be the controlling decision-maker in the business.

16.     Also of both factual and legal import, Defendant is not a signatory to the Brooklyn on U, LLC agreement, and is not listed in any way as a registered agent or authorized representative.

17.     Over the course of several months, Plaintiff poured countless hours, and significant financial investment into the standing-up of Brooklyn on U, which was located across the street from the DC landmark "Ben's Chili Bowl."

18.     Not only was Defendant often absent from the DMV because of his personal work schedule, he actively courted the investors that he had been introduced to by Plaintiff, to invest in a totally different project in which Plaintiff was not a participant. This was Defendant's first effort to intentionally interfere with and undermine the success of Brooklyn on U.

19.     Brooklyn on U opened as a going concern in January of 2019.  It launched with great fanfare and excellent revenue due to Plaintiff's hard work, and his ability to leverage his popularity and business and media contacts.

20.     Within a few months, it became clear to Plaintiff that the revenue generated by liquor sales and other patronage was being subsumed by costs and inexplicable expenditures, nearly all of which involved Defendant, who was ostensibly expert in business management.

21.     As the relationship between Plaintiff and Defendant continued to deteriorate, Defendant took active steps to create a wedge between Plaintiff and his business partners Mrs. Shah and Mr. Lupo.  These efforts include, but are not limited to, persuading them to attempt to push Plaintiff out of the business; sending communications to the staff and investors of Brooklyn on U to sour them on Plaintiff's

business decisions, and to persuade vendors and others to cease doing business with Plaintiff.

22.     On or about July 3, 2019, in total and complete abrogation of the terms of the Urban Integration LLC agreement and the Brooklyn on U, LLC agreement, Mrs. Shah and Mr. Lupo unilaterally attempted to divest Plaintiff of his entire stake in the business.  They did so at the urging and behest of Defendant.

23.     To advance their intentions, Mr. Lupo and Mrs. Shah changed the locks at Brooklyn on U, informed staff and others that Plaintiff was no longer an owner of the business, and took steps to remove Plaintiff from the liquor license, lease and bank account of the business.

24.     Defendant was not only an active participant in each of these actions, but he was the principal instigator of these actions, knowing that such actions would divest Plaintiff of a valuable interest in a going concern.

25.     Both the Urban Integration and Brooklyn on U agreements contain arbitration provisions.  Plaintiff will be resolving his disputes with his business partners in the arbitration process.

26.     The claims herein arise out of the many unlawful, tortious, and defamatory acts of Defendant in spurring on, facilitating and encouraging Mrs. Shah and Mr. Lupo to breach their agreements with Plaintiff, and to divest him of the fruits of more than two years of work and thousands of dollars of his own money, as well as investments from his network of friends and supporters.

## CLAIMS

FRAUD IN THE INDUCEMENT TO ENTER INTO A CONTRACT

### COUNT I
### (Fraud With Respect to Urban Integrations LLC)

27.    Plaintiff reasserts the allegations contained in paragraphs 5-26 as if fully stated herein.

28.    Mrs. Shah, the minority owner of Urban Integrations LLC, is an immigrant to the United States who arrived here after 2010.  She has never expressed to Plaintiff a desire to run a business, and has no business experience of acumen.

29.    Plaintiff entered into a contract with Mrs. Shah for only one reason:  he was asked to do so by Defendant.

30.    In 2016, Defendant informed Plaintiff that he would be unable to partner with him because of restrictions related to his employment with Deloitte.

31.    In order to induce Plaintiff to go into business with Mrs. Shah, Defendant represented that Mrs. Shah would act in accordance with Defendant's instructions at all times.

32.    Furthermore, on at least three occasions, or about February 17, 2016, while Plaintiff was engaging Emily Moran of Julio Design Build, on or about February 27, 2016, while looking for properties with realtor David Stein, , and on or about May 14, 2016, when Plaintiff was again discussing with realtor David Stein the idea for Brooklyn on U, Defendant assured Plaintiff that neither he, nor his wife, Mrs. Shah, would do anything or take any action to undermine Plaintiff's business interest or divest him of his ownership interest in any way.

33.     At the time that Defendant made these representations, he knew them to be false, and knew that absent such representations, Plaintiff would have never agreed to enter into the contract with Mrs. Shah.

34.     Upon information and belief, Defendant's intentions are memorialized in his communications with his wife, and the investors that Defendant claims to have procured for Brooklyn on U.

35.     Defendant's tortious and unlawful actions were designed to mislead Plaintiff into believing he was working with a husband and wife team who would be loyal to him.  Further, Defendant knew, at the time that made such representations, that Plaintiff would likely rely on them.

36.     But for Defendant's specific representations, Plaintiff would have never entered into the Urban Integrations LLC agreement.

37.     As a direct and proximate cause of Plaintiff entering into a contract with Mrs. Shah, and investing his time and money in accordance with the terms of that contract, and being divested of the benefit of that contract by Mrs. Shah, Plaintiff has suffered economic losses and non-pecuniary emotional damages in excess of $250,000.00.

## COUNT II
### (Fraud With Respect to Brooklyn on U, LLC)

38.     Plaintiff reasserts the allegations contained in paragraphs 5-37 as if fully stated herein.

39.     Defendant was actively involved in discussions and negotiation regarding the role Mr. Lupo would play in Brooklyn on U, and what percentage of ownership in Brooklyn on U Mr. Lupo should have.  This participation included attending multiple meetings and being on conference calls to work out the details of the arrangement.

40.     Mrs. Shah played very little role in these discussions. She was given an ownership stake in Brooklyn on U LLC solely at the behest of Defendant.

41.     Both Mr. Lupo and Plaintiff agreed to partner with Mrs. Shah because Defendant requested it.

42.     Plaintiff agreed to Defendant's request for one reason, and one reason only: because Defendant represented to Plaintiff that neither he nor his wife would take any future action to harm or undermine Plaintiff's interest in Brooklyn on U.

43.     At the time that time that Defendant made these false and misleading representations to Plaintiff, he knew that he and his wife intended to divest Plaintiff of his investment and ownership stake in Brooklyn on U.

44.     Upon information and belief, Defendant's deceitful intent is memorialized in communications to his wife, and the investors that Defendant claims to have procured for Brooklyn on U.

45.     But for Defendant's specific representations, Plaintiff would have never entered into the Brooklyn on U LLC agreement.

46.     As a direct and proximate cause of Plaintiff entering into a contract with Mrs. Shah and Mr. Lupo, and investing his time and money in accordance with the terms of that contract, and being divested of the benefit of that contract by Mrs. Shah and Mr. Lupo, Plaintiff has suffered economic losses and non-pecuniary emotional damages in excess of $250,000.00.

TORTIOUS INTERFERENCE

**COUNT III**
**(Tortious Interference with the Urban Integration LLC Contract)**

9

47.     Plaintiff reasserts the allegations contained in paragraphs 5-46 as if fully stated herein.

48.     The agreement that forms Urban Integration LLC is a valid contract supported by the good and valuable consideration of Plaintiffs investment of time, work and money, and Mrs. Shah's investment of time and support of her husband's work on the Brooklyn on U project.

49.     Defendant was fully aware of the existence of the Urban Integration LLC agreement and its terms and provisions because he was an active participant in its drafting, and was specifically informed by Plaintiff that the contract had been fully executed upon his signing.

50.     From approximately January of 2019 to the present, Defendant has taken active unlawful, wrongful and injurious steps to induce Mrs. Shah to breach the terms of the Urban Integration LLC contract.  Such steps include, but are not limited to:

    a.     asking Mrs. Shah to lock Plaintiff out of the Brooklyn on U establishment

    b.     asking Mrs. Shah to take banking actions that would remove Plaintiff from the Brooklyn on U account

    c.     asking Mrs. Shah to tell Brooklyn on U employees they no longer need to heed Plaintiff's instructions.

    d.     asking Mrs. Shah to align with Mr. Lupo to assert a majority status in Brooklyn on U.

    e,     asking Mrs. Shah and Mr. Lupo to jointly act to remove Plaintiff from his ownership stake in Brooklyn on U.

51.      On or about July 3, 2019, as described in the FACTS section *supra*, and referenced herein in its entirety, Mrs. Shah breached the terms of the Urban Integration LLC agreement by taking active measures to push Plaintiff out of the business and divest him of his controlling ownership of Urban Integration.

52.     Mrs. Shah took the actions she did at the behest, and upon the request and urging of her husband, Defendant.

53.     As a direct and proximate cause of the breach that was induced by Defendant, Plaintiff has suffered economic losses and non-pecuniary emotional damages in excess of $250,000.00.


## COUNT IV
### (Tortious Interference with the Brooklyn on U LLC Contract)

54.     Plaintiff reasserts the allegations contained in paragraphs 5-53 as if fully stated herein.

55.     The agreement that forms Brooklyn on U, LLC is a valid contract supported by the good and valuable consideration of Plaintiffs investment of time, work and money, and Mrs. Shah's investment of time and support of her husband's work on the Brooklyn on U project, and Mr. Lupo's contribution of restaurant management expertise.

56.     Defendant was fully aware of the existence of the Brooklyn on U, LLC agreement and its terms and provisions because he was an active participant in its drafting, and was specifically informed by Plaintiff that the contract had been fully executed upon his signing.

57.     From approximately January of 2019 to the present, Defendant has taken active unlawful, wrongful and injurious steps to induce Mrs. Shah and Mr. Lupo to breach the terms of the Brooklyn on U, LLC contract.  Such steps include, but are not limited to:

a.   asking Mrs. Shah and Mr. Lupo to lock Plaintiff out of the Brooklyn on U establishment

b.   asking Mrs. Shah and Mr. Lupo to take banking actions that would remove Plaintiff from the Brooklyn on U account

c.   asking Mrs. Shah and Mr. Lupo to tell Brooklyn on U employees they no longer need to heed Plaintiff's instructions.

d.   asking Mrs. Shah to align with Mr. Lupo to assert a majority status in Brooklyn on U.

e,   asking Mrs. Shah and Mr. Lupo to jointly act to remove Plaintiff from his ownership stake in Brooklyn on U.

58.   On or about July 3, 2019, as described in the FACTS section *supra*, and referenced herein in its entirety, Mrs. Shah and Mr. Lupo breached the terms of the Brooklyn on U, LLC agreement by taking active measures to push Plaintiff out of the business and divest him of his controlling ownership of his rights as Managing Member of Brooklyn on U and o f his ownership stake in the business.

59.   Mrs. Shah and Mr. Lupo took the actions they did at the behest, and upon the request and urging of Defendant.

60.   As a direct and proximate cause of the breach that was induced by Defendant, Plaintiff has suffered economic losses and non-pecuniary emotional damages in excess of $250,000.00.

## COUNT V
### (Tortious Interference with ANC Agreement)

61.   Plaintiff reasserts the allegations contained in paragraphs 5-59 as if fully stated herein.

62.   In order to obtain a valid and operable liquor license to sell alcohol, Brooklyn on U had to reach agreement with the local Advisory Neighborhood Commission (hereinafter "ANC").  This process involved attending meetings, and satisfying the members of the ANC that Brooklyn on U would be a responsible business and not

constitute too much of a disruption or imbalance in the neighborhood.  *See* EXHIBIT 3.

63.     The ANC agreement was entered into by the ANC and the Alcohol Beverage Control Board (hereinafter "the ABC"), upon the application of Brooklyn on U, LLC. This agreement governs how Brooklyn on U must operate to maintain its good standing and retain its liquor license.

64.     Plaintiff signed the ANC agreement as Managing Member of Brooklyn on U.  No other member of Brooklyn on U signed this agreement.

65.     Defendant was fully aware of the existence of the ANC agreement because he was informed of its existence by Plaintiff and was physically present when it was signed.

66.     Defendant took the following steps to induce a breach of the ANC Agreement:

(a)  called the ANC and tried to get Plaintiff removed from the agreement;

(b)  contacted counsel for Brooklyn on U LLC, Stephen O'Brien, who represented the enterprise with respect to obtaining a liquor license, and attempted to  obtain his assistance in removing Plaintiff from the liquor license and ANC agreement to which he alone was signatory.  (*See* EXHIBIT 4).

(c) partnered with Mr. Lupo to convince the ANC and ABC to breach the terms of the liquor license and ANC agreement.

67.      Defendant was aware that such a breach would cause immediate harm to Plaintiff's ownership and management interests in Brooklyn on U when he acted to induce such breaches.

68.     As a direct and proximate cause of Defendant's actions, Plaintiff has suffered economic losses and non-pecuniary emotional damages in excess of $250,000.00.

## COUNT VI
### (Tortious Interference with Brooklyn on U's Business License)

69.     Plaintiff reasserts the allegations contained in paragraphs 5-68 as if fully stated herein.

70.     In order to obtain a valid and operable business license, Brooklyn on U had to apply for one with the District of Columbia Department of Consumer and Regulatory Affairs (hereinafter "DCRA").  *See* EXHIBIT 5.

71.     The business license governs how Brooklyn on U must operate to maintain its good standing and right to conduct business as a going concern in the District of Columbia.

72.     As noted on the license, Plaintiff is the authorized and registered against of Brooklyn on U.  *See id.*  In no way, shape or form is Defendant authorized to conduct business in the District of Columbia under the name of Brooklyn on U.  His name appears nowhere on the application that was submitted for the business license.

73.     Defendant was fully aware of the existence of the business license that permitted Brooklyn on U to operate because Plaintiff and Mr. Lupo both made him aware of its existence.

74.     The license was clearly granted to Brooklyn on U's with Plaintiff as its registered agent.  Brooklyn on U has no other lawful registered agent, and is not licensed to operate with different management.

75.      Defendant's unlawful usurpation of the registered agents' rights and responsibilities constitute a breach of the terms that induced the District of Columbia DCRA to grant the business license to Plaintiff.

76.     As a direct and proximate cause of Defendant's actions, Plaintiff has suffered economic losses and non-pecuniary emotional damages in excess of $250,000.00.

## COUNT VII
### (Tortious Interference with Business Relationship With Mrs. Shah)

77.     Plaintiff reasserts the allegations contained in paragraphs 5-76 as if fully stated herein.

78.     Defendant was fully aware of the fact that Plaintiff and Mrs. Shah were engaged in an ongoing business relationship, because it was Defendant who induced and encouraged them to enter into that business relationship.

79.     Defendant was also fully aware that the ongoing nature of the business relationship between Mrs. Shah and Plaintiff would inure to Plaintiff's short-term and long-term financial interests.

80.     Defendant was aware that Plaintiff had invested a great deal of his personal time and resources into the business relationship with Mrs. Shah in order to make Urban Integrations and Brooklyn on U a success.

81.     In the many ways described in the FACTS section *supra*, in the factual allegations in support of the claims *supra*, and as fully restated herein, Defendant intentionally, willfully, and without excuse interfered in and poisoned the ongoing business relationship between Plaintiff and Mrs. Shah.

82.     Defendant was aware that his acts to sabotage the relationship between Plaintiff and Mrs. Shah would cause immediate harm to Plaintiff's ownership and management interests in Urban Integration LLC and Brooklyn on U, LLC.

83.    As a direct and proximate cause of Defendant's actions, Mrs. Shah has breached her agreement with Plaintiff and has irreparably severed her ongoing business relationship with Plaintiff.

84.    Defendant's unlawful and tortious conduct has caused Plaintiff to suffer economic losses and non-pecuniary emotional damages in excess of $250,000.00.

### COUNT VIII
### (Tortious Interference with Business Relationship With Mr. Lupo)

85.    Plaintiff reasserts the allegations contained in paragraphs 5-84 as if fully stated herein.

86.    Defendant was fully aware of the fact that Plaintiff and Mr. Lupo were engaged in an ongoing business relationship, because it was Defendant who induced and encouraged them to enter into that business relationship.

87.    Defendant was also fully aware that the ongoing nature of the business relationship between Mr. Lupo and Plaintiff would inure to Plaintiff's short-term and long-term financial interests.

88.    Defendant was aware that Plaintiff had invested a great deal of his personal time and resources into the business relationship with Mr. Lupo in order to make Brooklyn on U a success.

89.    In the many ways described in the FACTS section *supra*, in the factual allegations in support of the claims *supra*, and as fully restated herein, Defendant intentionally, willfully, and without excuse interfered in and poisoned the ongoing business relationship between Plaintiff and Mr. Lupo.

90.     Defendant was aware that his actions would sabotage the relationship between Plaintiff and Mr. Lupo, and would cause immediate harm to Plaintiff's ownership and management interests in Brooklyn on U, LLC.

91.     As a direct and proximate cause of Defendant's actions, Mr. Lupo has breached his agreement with Plaintiff and has irreparably severed his ongoing business relationship with Plaintiff.

92.     Defendant's unlawful and tortious conduct has caused Plaintiff to suffer economic losses and non-pecuniary emotional damages in excess of $250,000.00.

CONVERSION

**COUNT IX**
**(Wrongful Taking of Cash Deposits at BB&T Bank)**

93.     Plaintiff reasserts the allegations contained in paragraphs 5-92 as if fully stated herein.

94.     As controlling shareholder of Urban Integrations LLC and Managing Member of Brooklyn on U, LLC, Plaintiff had both an ownership and management interest in all funds and revenue from Brooklyn on U.  *See* EXHIBITS 1 & 2.

95.     On or about May 18, 2017, Plaintiff and Mr. Lupo opened a bank account on behalf of Brooklyn on U at Branch Banking & Trust (hereinafter "BB&T").

96.     On information and belief, or about July 2, 2019, without the authorization of the Brooklyn on U's Managing Member (Plaintiff), Defendant went to BBT, tendering a document purporting to be a board resolution, and closed the account, removing approximately $200,000 that was in the account at the time.

97.     Defendant had no legal authority to take this action, which, on its face, violated the terms of the Brooklyn on U agreement, and the rights and responsibilities of the Managing Member contained therein.

98.     Plaintiff was an absolute owner of a portion of those funds as not just a Managing Member, but a 40% owner of Brooklyn on U.

99.     Defendant had no right to inert himself into the banking affairs of Brooklyn on U, as he was not a signatory to either the Urban Integrations LLC or Brooklyn on U, LLC agreements and had no ownership or management rights of ANY KIND in either LLC.

100.    By taking unlawful steps to close the Brooklyn on U BB&T account, and place the funds in an account Plaintiff could not access, Defendant took dominion and control over Plaintiff's personal property.

101.    Defendants actions were the immediate and proximate cause of Plaintiff's loss of control and enjoyment of his personal property, such acts being unjustified and in abrogation of the law and of Plaintiff's contractual agreements with Mr. Lupo and Mrs. Shah.

102.    As a direct and proximate cause of Defendant's actions, Plaintiff suffered economic losses and non-pecuniary emotional damages in excess of $250,000.00.

**COUNT X**
**(Wrongful Taking of Plaintiff's Shares in Urban Integration**
**and Brooklyn on U, LLC)**

103.    Plaintiff reasserts the allegations contained in paragraphs 5-102 as if fully stated herein.

104.    As controlling shareholder of Urban Integrations LLC and Managing Member of Brooklyn on U, LLC, Plaintiff had both an ownership interest in the enterprises, such shares have material and marketable value.  *See* EXHIBITS 1 & 2.

105.    On or about July 3, 2019, without the authorization of the Brooklyn on U's Managing Member (Plaintiff), Defendant seized control of Plaintiff's shares, by way of an unlawful act that constituted a breach of the operable agreements.

106.    In furtherance of the taking of Plaintiff's personal property, Defendant took specific action to exercise dominion and control over Brooklyn on U, and to prohibit Plaintiff's ability to enter the premises in order to execute his duties, or to access any of Brooklyn on U's revenue.

107.    Defendant further executed his unlawful taking of Plaintiff's ownership stake and shares by informing several people, including but not limited to, the following persons:

(a) Joey Love (Tax Accountant);
(b) Stephen O'Brien (Attorney);
(c)  Brooke Walton (Customer);
(d) Kitima Riabaskual (Brooklyn on U General Manager);
(e) Teahgbyeklay Ku Nelson (Brooklyn on U Manager);
(f) Melvin Franco (Brooklyn on U Chef & Manager);
(g) DJ Cheik Mbengue (Plaintiff's Partner in another business);
(h)Marcus Williams (Investor); and
(i) Samira Alli (Investor)

that he was taking over Plaintiff's ownership stake:

108.    Defendant had no right to take and control Plaintiff's management and ownership stake in Brooklyn on U, and his actions in doing so were tortious and unjustified.

109.    By taking the unlawful steps that he did, Defendant effectively took dominion and control over Plaintiff's shares in Urban Integration LLC, and in Brooklyn on U, LLC, such shares being the personal property of Plaintiff.

110.    Defendants actions were the immediate and proximate cause of Plaintiff's loss of control and enjoyment of his personal property, such acts being unjustified and in abrogation of the law and of Plaintiff's contractual agreements with Mr. Lupo and Mrs. Shah.

111.    As a direct and proximate cause of Defendant's actions, Plaintiff suffered economic losses and non-pecuniary emotional damages in excess of $250,000.00.

## DEFAMATION

### COUNT XI
### (Defamation of Plaintiff's Character and Business Reputation)

112.    Plaintiff reasserts the allegations contained in paragraphs 5-111 as if fully stated herein.

113.    In further advancement of his scheme to divest and deprive Plaintiff of his business and ownership interests, Defendant made repeated, false and defamatory statements to third parties in order to justify actions that would otherwise look suspicious.

114.    Plaintiff alleges Defendant published false, unflattering, injurious and defamatory statements by way of verbal and written communications, claiming that Plaintiff was a bad businessman and poor manager, that he was to blame for Brooklyn on U's financial and operational struggles, and that he was a dishonest and impossible business partner to the following persons who enjoyed no privilege or need to know:

(a) Antonis Karagounis

     (b) Ameet Ajohal
     (c) Charles Zhou
     (d) DJ Cheick Mbengue
     (e) Tracy Javier
     (f) Samira Alli
     (g) Marcus Williams

115.    At the time the statements were made, Defendant knew them to be false and acted with reckless disregard for the harm his utterances would cause.  His purpose was to justify his own harmful and unlawful conduct.

116.    Defendant's utterances of false and defamatory statements caused immediate and irreparable injury to Plaintiff's business reputation and ability to conduct business in the DMV.

117.    As a direct and proximate cause of Defendant's false, misleading, disparaging and denigrating remarks, Plaintiff has suffered economic and business opportunity losses, including loss of potential investment in future business ventures.  Plaintiff has also suffered emotionally and psychologically because of Defendant's reckless and unjustified actions, and seeks compensation in an amount not less than $250,000.00

### *AD DAMNUM* CLAUSE

118.    Without cause, justification or legal basis, Defendant engaged in a careful and calculated campaign to divest Plaintiff of his ownership and management interest in an enterprise that would have never come into being without Plaintiff's personal talents, resources and investments.  Defendant's actions have injured Plaintiff's reputation, caused him to incur immediate and long-term costs, and have permanently undermined his relationship with his business partners.

For the reasons stated herein, Plaintiff is entitled to judgment in his favor, any and all injunctive and declaratory relief this Court can render to stop Defendant's

harmful and unlawful activity, compensatory damages in excess of $250,000.00, non-pecuniary damages in excess of $250,000.00, punitive damages, if this Court should deem them appropriate, and any and all other relief this Court deems just.   Every claim in this Complaint should be read to be seeking any, every, and all remedies available to Plaintiff under the law.

## JURY TRIAL DEMAND

119.    Plaintiff is entitled to and demands that the claims herein be decided by jury trial.

Respectfully submitted,

*Donald M. Temple*
Donald M. Temple , Esq.
DC Bar No. 408749
Temple Law Offices
1310 L St., NW
Suite 750
Washington, DC 20005
202-628-1101 (o)
202-302-0383 (m)
202-628-1149 (f)
Dtemplelaw@gmail.com
*Counsel for Plaintiff*